**Regina Edna WALTON, Respondent,**

v.

**Eugene O. WALTON and The Restored Church of Jesus Christ, Appellants.**

**No. WD 40785.**

Missouri Court of Appeals,
Western District.

March 21, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Joseph Moore, Moore and Willy, Kansas City, for appellants.

Regina Edna Walton, pro se.

Before MANFORD, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Regina Walton sought a dissolution of her marriage with Eugene Walton. She joined The Restored Church of Jesus Christ as a defendant claiming that the church was in fact the alter ego of Eugene and that she was entitled to property they had previously given to the church. The court dissolved the marriage, ordered Eugene to pay $300 per month maintenance to Regina, divided certain property between Regina and Eugene, and ordered Eugene to pay part of Regina's attorney fees. The court rejected the theory that the church was the alter ego of Eugene.

Eugene appeals, challenging the award of maintenance and attorney fees against him and the church appeals contending that it owns most of the property the court divided between the parties. Affirmed in part and reversed in part.

Regina and Eugene had been married about 40 years when the dissolution was filed. Regina was 59 and Eugene was 60 at the time of trial. Eugene had been a minister and in December 1981 was the guiding force in establishing The Restored Church of Jesus Christ which was chartered as a Missouri not-for-profit corporation. Regina and two of their children also served as incorporators.

Previously, Eugene had been engaged as an insurance salesman, but in 1979 he said that he received a revelation from God that he was "to forsake the world of business and to labor for the souls of men on a full-time basis." Since that time Eugene has not worked outside of the church. A basic tenet of the church was that the members would have all things in common. Under this practice all members of the church conveyed and transferred all of their property to the church and the church agreed that it would provide for the members as long as they remain faithful, according to their needs, just wants, and family circumstances, and as the circumstances of the church will allow or justify. In 1984 Regina conveyed all of her interest in the house she and Eugene owned together with all furniture and household goods located in the house and garage. She also conveyed her interest in a lot at Crystal Lake to the church. Eugene likewise conveyed his interest in these properties as well as his interest in a cemetery lot to the church.

Although the court found that the church was a separate corporation and that it could not look behind the corporate existence of the church, the court awarded Regina certain household goods which had been conveyed to the church along with the lot at Crystal Lake. The court awarded to Eugene certain household goods which had been conveyed to the church together with the burial plot.

Eugene testified that his income consisted of $35 per week which he received from the church in conjunction with a church provided food allowance and an allowance for gasoline for his automobile. He further stated that the church provided for every need he might ever have. Eugene also testified that maintenance to support Regina was a just want and family circumstance within the meaning of the agreement made by the church to provide for his needs and just wants according to his family circumstances. Eugene further testified that he felt he should pay to help support his wife.

Regina testified that she had an eighth grade education, had some health problems, had not worked outside the home for about 25 years and had no particular job skills. She further stated that she had little income to meet her monthly living expenses of just over $1000.

The court ordered Eugene to pay $300 per month in maintenance and to pay the sum of $2695.50 as partial attorney fees to Regina.

██ In his appeal Eugene argues that the award of maintenance and attorney fees to Regina is unjustified because his only income is $35 per week and he is forbidden, by the commandment of God, to enter the business world to make additional income even though he is physically capable of working. Eugene's argument is refuted by his own testimony. He testified that the church is to provide for his needs and just wants as his family circumstances may require and he conceded that the necessity to provide for Regina by way of maintenance falls within the just wants and family circumstances of the church's obligation to him. In a similar situation the court in *Pencovic v. Pencovic*, 45 Cal.2d 97, 287 P.2d 501 (1955), considered the situation of a father who had joined a church in which the members gave all of their property to the church and were to receive in return compensation measured by the members needs. The court concluded that the trial court could have reasonably found that the amount paid to the member would be increased to meet any additional obligation imposed upon the member to pay child support. *Id.* 287 P.2d at 504. The court further stated that the fact that the church was not obligated to support the children was immaterial because the church had adopted as the measure of its compensation to the member his needs including his obligation to support his children. *Id.*

In this case, Eugene has admitted that the church is to pay him for his support according to his needs and just wants as determined by his family circumstances. The trial court was justified in inferring that the church would increase its payment to Eugene to meet his obligation to pay maintenance to Regina because Eugene testified that such maintenance payments

were his obligation and constituted a family circumstance which would justify an increased payment from the church.[1]

The payment of a part of Regina's attorney fees would fall under the same category as Regina's direct support by maintenance and would likewise justify the court in inferring that the church would increase its payments to Eugene to meet the necessity to pay part of Regina's attorney fees. The judgment for maintenance and partial attorney fees is affirmed.

■ Documents were introduced at trial showing that Regina and Eugene had conveyed all of their household goods, the lot at Crystal Lake and the cemetery lot to the church. However, the court without explanation, divided the household goods and awarded the lot at Crystal Lake to Regina and the cemetery plot to Eugene. The church appeals and contends that these properties should not have been distributed to the parties because they were in fact the property of the church. The household goods, the lot at Crystal Lake and the cemetery lot were conveyed to the church and no attack upon those conveyances has been made. Nothing has been raised on this appeal to show that the conveyances to the church were invalid and should not be recognized. The conveyances were made about three years prior to the separation of the parties and Regina and Eugene both acknowledged that they had conveyed all such property to the church.

The division of property which awarded Regina the lot at Crystal Lake and household goods and the judgment which awarded Eugene the cemetery lot and household goods is reversed and the court is directed to enter judgment that all of such property belongs to the church and is not subject to division between Regina and Eugene.

The judgment awarding maintenance and attorney fees to Regina is affirmed. The judgment awarding household goods and the lot at Crystal Lake to Regina and household goods and the cemetery lot to Eugene is reversed. This cause is remanded to the circuit court for entry of judgment as directed herein. Costs are assessed against Eugene Walton.

All concur.

---

1. Eugene makes some argument that Regina resigned from the church and she is therefore no longer entitled to support from the church. The judgment does not require the church to support Regina. The judgment is against Eu-gene on the inference that the church will increase its payment to him because his .family circumstance requires him to support Regina through maintenance payments.